PREGERSON, J.,
dissenting:
I dissent because I disagree with the majorities’ review of Plaintiff-Appellant’s best available science claim. We review the district court’s grant of summary judgment on Plaintiff-Appellant’s best available science claim de novo, with all facts read in the light most favorable to the non-moving party. Covington v. Jefferson County, 358 F.3d 626, 641 n. 22 (9th Cir. 2004). The Administrative Procedure Act governs our review of agency decisions under the Endangered Species Act and the National Forest Management Act. Selkirk Conservation Alliance v. Forsgren, 336 F.3d 944, 953 (9th Cir.2003). It mandates that agency decisions be set aside if they are “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U.S.C. § 706(2)(a). “An agency’s action is arbitrary and capricious if the agency fails to consider an important aspect of a problem,.... ” Lands Council v. Powell, 395 F.3d 1019, 1026 (9th Cir. 2005).
Section 7 of the Endangered Species Act requires the Forest Service to consult with the Fish and Wildlife Service to ensure that the standards it incorporates in its Forest Plan are “not likely to jeopardize the continued existence of any ... threatened species [such as the CabinetYaak grizzly bear] or result in the destruction or adverse modification of such species....” 16 U.S.C. § 1536(a)(2). Further, “[i]n fulfilling th[is] requirement,” the two agencies “shall use the best scientific and commercial data available.” Id. The procedural guidelines for complying with this requirement specify that “Reinitiation of formal consultation is required ... [i]f new information reveals effects of the action that may affect listed species ... in a manner or to an extent not previously considered[.]” 50 C.F.R. § 402.16; see Conner v. Burford, 848 F.2d 1441, 1454 (9th Cir.1988) (agencies “cannot ignore available biological information”).
Pursuant to section 7 of the Endangered Species Act, the Forest Service then is required to apply the standards developed in the Forest Plan to protect the Cabinet-Yaak grizzly bear to proposed projects such as the Northeast Yaak Project. 16 U.S.C. § 1536(a)(2). By applying these protective standards to proposed projects, the Forest Service “shall, in consultation with [the Fish and Wildlife Service], insure that [the proposed project] ... “is not likely to jeopardize the continued existence of any ... threatened species [such as the Cabinet-Yaak grizzly bear] or result in the destruction or adverse modification of such species....” Id. In doing so, the two agencies again “shall use the best scientific and commercial data available.” Id.
I disagree with my colleagues that the decisional documents for the Northeast Yaak Project reflect sufficient consideration of the best available science. On the contrary, the standards developed in the Forest Service’s 1987 Forest Plan and Fish and Wildlife Service’s 1995 Biological Opinion (“Forest Plan”) did not account for *170 “the best scientific ... data available” as required under the Endangered Species Act Section 7 when they were applied to the Forest Service’s Cabinet-Yaak project in 2007. See id. The Forest Plan did not account for “the best scientific ... data available” when applied in 2007, id., because it neither accounted for the 1997 Wakkinen Study[1] nor up-to-date population trend data.
For this reason, the “Forest Service cannot go forward with th[e Cabinet-Yaak project] without first complying with the consultation requirements of the [Endangered Species Act].” Pacific Rivers Council v. Thomas, 30 F.3d 1050, 1057 (9th Cir.1994). Accordingly, I dissent.

. The 1997 Wakkinen Study is "the only habitat parameters study based on bears in the [Cabinet-Yaak Project] area.” Cabinet Res. Group v. U.S. Fish and Wildlife Serv., 465 F.Supp.2d 1067, 1089 (D.Mont.2006).